UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT

————————————

No. 13-3082

————————————

UNITED STATES OF AMERICA,                          Appellant,

    v.

ALI MOHAMED ALI,
    a/k/a Ismail Ali                              Appellee.

### APPELLANT'S MEMORANDUM OF LAW AND FACT SEEKING REVERSAL OF THE DISTRICT COURT'S ORDER OF RELEASE

Appellee Ali M. Ali has been charged with, inter alia, piracy under the law of nations, in violation of 18 U.S.C. § 1651, and hostage taking and conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203, in connection with the seizure of a merchant vessel and its crew off the coast of Somalia. United States v. Ali, 718 F.3d 929, 933-34 (D.C. Cir. 2013). If convicted of any of those charges, Ali faces the potential of life imprisonment.

On September 5, 2013, the district court (Hon. Ellen S. Huvelle) entered an order releasing Ali to home confinement subject to electronic monitoring. On September 5, 2013, the government noted an appeal of the district court's release order.[1]

_____

[1] The district court denied the government's motion to stay its order of release. On September 6, 2013, this Court granted the government's emergency motion seeking Ali's return to custody pending the resolution of this appeal.

This Court should reverse the order of release because the district court erred in concluding that Ali's continued pretrial detention violates his Fifth Amendment right to due process, and because the district court disregarded Ali's significant risk of flight. Indeed, Ali is a foreign national with ties to Somalia; he lacks current ties to the District of Columbia, or even to the United States; he has no property, money, or other assets in this district; his closest family members live abroad; having been charged with hostage taking, he is subject to a rebuttable presumption that no combination of conditions will assure his presence at trial; and he faces the potential of life imprisonment if convicted.

On March 14, 2012, this Court affirmed a previous order of detention in this case. United States v. Ali Mohamed Ali, 459 Fed. Appx. 2 (D.C. Cir. 2012). On August 3, 2012, this Court reversed the district court's July 24, 2012, order releasing Ali subject to conditions, and ordered Ali's return to custody. United States v. Ali Mohamed Ali, No. 12-3057, Judgment (D.C. Cir. Aug. 3, 2012). Since this Court's August 3, 2012, Judgment, the risk that Ali will flee has only *increased*. Unlike on August 3, 2012, when the district court had dismissed or severely limited the government's most significant charges in this case, those dismissals now have been reversed as to all but one count, and Ali knows that he will begin trial on October 31, 2013, on charges carrying a potential life sentence. Moreover, because trial is scheduled to begin on October 31, 2013, the

3

additional pretrial delay that will occur in this case is minimal when balanced against the risk of flight.[2] Accordingly, this Court should reverse the district court's order of release.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 2008, a group of pirates commandeered the merchant vessel *CEC Future* while it was sailing in international waters in the Gulf of Aden.[3] See United States v. Ali, 793 F. Supp. 2d 386 (D.D.C. 2011) (denying Ali's motion for release). The pirates, armed with rifles, handguns, and a rocket-propelled grenade, fired upon and then boarded the *CEC Future*, and forced its crew to sail the ship to a location off the coast of Somalia. Id. at 387. Ali boarded the ship shortly after the ship was seized, and thereafter assisted the pirates by negotiating their ransom demands directly with the Clipper Group (Document 172).[4] On January 16, 2009, the pirates released the *CEC Future* and her crew, having received $1.7 million in U.S. currency as a ransom payment. Ali, 793 F. Supp. 2d at 387. On January 27, 2009, Ali received a separate $75,000 ransom

---

[2] The government advised the district court on September 4, 2013, that it was prepared to commence trial on October 7, 2013, but the district court indicated it would be unavailable in October and that more time would be needed by the jury office to summon enough jurors for the trial (see Document 299 at 9 n.3). The government disagrees that a special panel is needed to select the jurors for this case.

[3] The *CEC Future* is owned by the Danish company Clipper Group A/S (Clipper Group).

[4] References are to the district court's docket in this case.

payment, which was deposited directly into a bank account he had specified (Document 172). On April 20, 2011, Ali was arrested at Dulles International Airport.

On April 28, 2011, the government successfully moved for Ali's pretrial detention (Documents 10, 12). The government argued, <u>inter alia</u>, that Ali posed a serious risk of flight because he was charged with offenses carrying the potential of life imprisonment; resided in Somalia, a country with which the United States has no extradition treaty; lacked significant ties to this country at the time of his arrest; was arrested with two passports issued by different countries listing different birth dates; and provided inconsistent biographical information on immigration documents (Document 10).

On June 17, 2011, the district court (Hon. Paul L. Friedman) held an evidentiary hearing on Ali's motion for release. Defense counsel presented evidence intended to show that Ali did not assist the pirates, but instead acted as their interpreter (6/17/11 Tr. 45-46, 59-63). On June 24, 2011, Judge Friedman issued a written order denying Ali's motion. <u>Ali</u>, 793 F. Supp. 2d at 392. The district court found by a preponderance of the evidence that no condition or set of conditions could reasonably assure Ali's presence at trial. The court addressed Ali's arguments in detail, finding, <u>inter alia</u>, that evidence presented at the hearing did not support Ali's claim of innocent presence. <u>Id</u>. at 390.

The district court also found that Ali's "history and characteristics" favored detention because, although Ali "has no criminal history in this country," his past misrepresentations to the government "are a concern"; Ali is accused of being a member of a "violent criminal enterprise"; he lacks "significant ties to the United States"; he "resides in Somalia where his young son remains"; he has "significant contacts overseas," including with pirate organizations that could provide financing or support for flight to Somalia; and the United States lacks an "extradition treaty" with Somalia, which, in any event, has only "limited" government. Id. at 392. Finally, the court found by a preponderance of the evidence that none of the conditions Ali had suggested, including home detention with electronic monitoring, waiver of his extradition rights, or release into the custody of a third party, would reasonably assure Ali's appearance at trial. Id.

Subsequently, Ali renewed his motion for release, based upon voluminous materials purportedly showing, inter alia, that he was assisting the CEC Future's crew and owners (see generally Document 101). Following a December 20, 2011, hearing, the court denied the motion (Document 84). It found that Ali lacks property in this country, "engaged in fraudulent behavior as determined by the INS," used aliases, and has "strong ties to Somalia," which provide him with "an incentive to go back to Somalia" (12/20/11 Tr. 35). Ali appealed.

On March 14, 2012, this Court affirmed Judge Friedman's detention order in an unpublished memorandum judgment. United States v. Ali, 459 Fed. Appx. 2 (D.C. Cir. 2012). The Court concluded:

> Appellant has been indicted for an offense that triggers a statutory presumption in favor of detention. See 18 U.S.C. § 3142(e)(3). The government proffered evidence that appellant engaged in offenses of piracy and hostage taking, which carry a potential life sentence upon conviction. Although appellant presented rebuttal evidence, the district court did not commit reversible error in determining that no conditions or combinations of conditions will reasonably assure appellant's appearance if appellant is released. Id. § 3142(e). In addition, given the seriousness and circumstances of the alleged offenses, appellant has not established a due process violation based upon the length of pretrial detention. See generally United States v. Salerno, 481 U.S. 739, 747 n.4 (1987); see also U.S. v. El-Gabrowny, 35 F.3d 63, 64 (2d Cir. 1994) (pretrial detention for over 18 months, which was expected to last total of 27 months before conclusion of trial, did not violate the suspect's due process rights, in light of seriousness of charges and complexity of the case).

This case was then reassigned to United States District Court Judge Ellen S. Huvelle for trial. On July 13, 2012, the district court issued an opinion dismissing Count 1 of the indictment (conspiracy to commit piracy) and narrowing Count 2 (piracy and aiding and abetting that offense). The district court concluded that neither aiding-and-abetting liability nor conspiracy liability could be imposed in this case for actions of a defendant that did not take place in international waters (on the "high seas"), even if the underlying piracy offense occurred on the high seas (Document 233 at 16-21). On July 24, 2012, after being informed of the government's decision to appeal the July 13 opinion, the district court *sua sponte*

dismissed Counts 3 and 4 (7/24/12 Tr. 4), and ordered Ali to be released subject to conditions (Document 261). The government appealed.

On August 3, 2012, this Court reversed the district court's order of release, concluding that it had "previously affirmed the district court's December 21, 2011 order determining that no condition or combination of conditions will reasonably assure [Ali's] appearance if he is released, see United States v. Ali, 473 Fed. Appx. 6 (D.C. Cir. 2012), and the underlying reasons for this court's prior decision remain substantially unchanged."

On June 11, 2013, this Court affirmed the dismissal of Count 1 (conspiracy to commit piracy) but reversed the limiting of Count 2 (aiding and abetting piracy) and the dismissal of Counts 3 and 4 (hostage taking and conspiracy to commit hostage taking). Ali, 718 F.3d at 932. The Court rejected the district court's ruling that in order to convict Ali for aiding and abetting piracy and hostage taking, the government must prove that Ali's conduct occurred while he was physically located on the high seas. Id. at 944-46.[5]

---

[5] Shortly thereafter, the parties and the district court agreed to a trial date of August 19, 2013. On July 2, 2013, Ali petitioned this Court for rehearing or rehearing en banc of its decision. On August 21, 2013, the Court denied Ali's petition. The mandate issued on August 29, 2013. When it became clear that Ali's petition for rehearing would make the August 19, 2013, trial date untenable, the district court set a trial date of November 4, 2013, which it later rescheduled for October 31, 2013.

8

On July 25, 2013, Ali again moved the district court for release pending trial (Document 285-1). Ali argued, <u>inter</u> <u>alia</u>, that certain conditions of release would assure his appearance at trial, and that the length of his detention, and the government's alleged responsibility for the delay, violated his right to due process. The government opposed Ali's motion (Document 290 at 1-3).

On September 5, 2013, the district court issued a Memorandum Opinion and Order releasing Ali subject to conditions (Document 299)(copy attached). The district court found that Ali's due process right required his release, and that home confinement would be sufficient to reasonably assure Ali's appearance at trial. This appeal followed. On September 6, 2013, this Court issued an order returning Ali to custody pending the resolution of this appeal.

<u>ARGUMENT</u>

The district court erred in ordering Ali's release from pretrial detention. The court is incorrect that Ali's continued pretrial detention violates due process. Moreover, the record does not support the district court's conclusion that home detention with electronic monitoring will reasonably assure Ali's appearance at trial.

A.    <u>Standard of Review and Applicable Legal Principles</u>

Under 18 U.S.C. § 3142(e), if a judicial officer finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." The district court's risk of flight determination must be supported by a preponderance of the evidence. See United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996). That determination is guided by four statutory factors: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

In addition, Ali is subject to a rebuttable presumption of detention, see 18 U.S.C. § 3142(e)(3)(C), because he is charged with hostage taking, in violation of 18 U.S.C. § 1203, which is a "[f]ederal crime of terrorism" under 18 U.S.C. § 2332b(g)(5)(B)(i), "for which a maximum term of imprisonment of ten years or more is prescribed."

This Court reviews the district court's legal determinations de novo, and reviews any factual findings only for clear error. United States v. Smith, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

B. Ali's Pretrial Detention Does Not Violate Due Process.

Further detention would not offend due process because Ali's pretrial detention has not been "excessively prolonged," and thus punitive, in light of the goals and purposes of the Bail Reform Act.

United States v. Salerno, 481 U.S. 739, 747 n.4 (1987).[6]

The district court erred in concluding that "the additional passage of time alone can be enough" to violate due process (Document 299 at 12). On the contrary, the length of pretrial detention is not "dispositive," and "will rarely by itself offend due process." United States v. Millan, 4 F.3d 1038, 1044 (2d Cir. 1993)(citation omitted).[7]

Ali was arrested on April 20, 2011. Thus, he has been detained for approximately 28 months. Courts have held that similar periods of pretrial detention did not violate due process. See United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) (no due process violation despite expected 26-month pretrial detention); United States v. El-Hage, 213 F.3d 74, 76-77 (2d Cir. 2000)(same, expected 33-month detention); United States v. El-Gabrowny, 35 F.3d 63, 65 (2d Cir.

---

[6] In Salerno, the Supreme Court expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." 481 U.S. at 747 n.4. In determining "whether the length of pretrial detention has become unconstitutionally excessive," courts typically weigh: the length of the pretrial detention; the extent of the prosecution's responsibility for delay of the trial; the gravity of the charges; and the evidence of risk of flight and dangerousness. United States v. El-Hage, 213 F.3d 74, 79-80 (2d Cir. 2000).

[7] The district court cited (at 12) United States v. Ojeda Rios, 846 F.2d 167, 169 (2d Cir. 1988), but in that case, the defendant's expected detention was 38 months, and it does not appear from the opinion that the defendant had a firm trial date. The other cases cited by the district court (at 12, 14) do not hold that the length of pretrial detention alone can entitle a suspect to pretrial release.

1994) (same, 27-month detention); Millan, 4 F.3d at 1049 (same, 30-month detention); United States v. Melendez-Carrion, 820 F.2d 56, 59 (2d Cir. 1987) (same, 19-month detention); United States v. Zannino, 798 F.2d 544, 548 (1st Cir. 1986) (same, 16-month detention).[8]

The district court attempted to distinguish these cases on the basis that those defendants were a danger to the community (Document 299 at 14)(citing, inter alia, El-Hage, 213 F.3d at 76). However, those cases do not indicate that dangerousness was dispositive to the outcome.[9] Moreover, in this case, Ali is subject to a rebuttable presumption of detention. See 18 U.S.C. § 3142(e)(3).[10]

---

[8] But see United States v. Gonzales-Claudio, 806 F.2d 334, 343 (2d Cir. 1986) (expected 26-month detention excessive where defendant posed little risk of flight); Ojeda-Rios, 846 F.2d at 169 (expected 38-month detention excessive).

[9] The district court (at 28) also relied on dictum in El-Hage, 213 F.3d at 80, indicating that in "an ordinary case, the risk of the defendant's flight alone might not justify a detention of this length." As explained in the text, Ali's risk of flight is in no sense "ordinary." In addition, Ali has a firm trial date of October 31, 2013.

[10] The district court (at 15, 17) referenced a brief remark made by one of the trial prosecutors during an informal, off-the-record plea negotiation involving the government, Ali, and Ali's counsel (Document 299 at 15). The trial prosecutor was trying to explain that the prosecutor did not view Ali as a "pirate" in the sense that the label connotes direct participation in the attack on the vessel while armed. But the prosecutor did not back away from the evidence that Ali aided and abetted the pirates who made an armed attack upon the *Future* and held that ship and its crew hostage for over two months. In addition, the district court's attempt (at 16 n.6) to distinguish United States v. Shibin, 722 F.3d 233, 236 (4th Cir. 2013), lacks

(continued . . . )

The district court also erred in concluding (at 19-20) that the time that passed during the pendency of the government's interlocutory appeal was chargeable to the government. Indeed, delay caused by a government appeal is not attributable to the government for purposes of a due-process analysis. See, e.g., United States v. Watson, 475 Fed. Appx. 598, 602 (6th Cir. 2012) (although government's suppression appeal accounted for seven months of defendant's detention, government certified that appeal was not for purposes of delay, and defendant "did not object to the Government's request to stay the proceedings pending our ruling on the motion to suppress, and, therefore, the second factor weighs against" defendant); United States v. Jones, 562 F.3d 768, 777 (6th Cir. 2009) (declining to find that defendant's detention during appeal resulted in a due process violation, even though the government's appeal of a suppression order postponed further trial proceedings).

Moreover, the district court was incorrect to suggest (at 20) that the delay is chargeable to the government because the government could have elected to forgo its (meritorious) interlocutory appeal. In the context of defendants' Sixth Amendment speedy-trial rights, the Supreme Court has explained that, "[g]iven the important public interests in appellate review," "it hardly need be said that an

---

(. . . continued)

merit. Ali, like Shibin, "held a high position among the pirates." Shibin, 722 F.3d at 236.

13

interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." United States v. Loud Hawk, 474 U.S. 302, 316 (1986). In Loud Hawk, the Supreme Court established factors for assessing the reasonableness of an appeal. "These include the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and -- in some cases -- the seriousness of the crime." Id. (citation omitted). Where, as here, the government took the appeal in good faith (it prevailed as to three of the four counts), the appeal was essential to the ability of the prosecution to go forward, and the offenses are serious, there is no constitutional violation. See, e.g., Loud Hawk, 474 U.S. at 316 (prevailing on appeal provides "prima facie evidence" of the reasonableness of the delay incurred by the government's interlocutory appeal); United States v. Frye, 489 F.3d 201, 210-11 (5th Cir. 2007) (government appeal of important issue was not unreasonable and did not weigh against government).

Moreover, the government also does not bear primary responsibility for any other delays in this case. This is unquestionably a complex case, involving actions that occurred in international waters off the coast of Somalia.[11] See El-Gabrowny, 35

---

[11] To that end, the victim-witnesses, the *CEC Future*'s crew members, are merchant mariners who are at sea for significant time periods, complicating their availability for trial. Similarly, the *CEC Future*'s owner, the Clipper Group, is a Danish company, and the witnesses and documentary evidence from that company are also outside
(continued . . . )

14

F.3d at 65 (delay due to complexity of case against terror-bombing suspect not responsibility of prosecution for purposes of evaluating due-process challenge to pretrial detention). See also Document 84. Ali's contention, repeated by the district court (at 21-22), that the government delayed seeking foreign assistance in gathering evidence was rejected by Judge Friedman (see, e.g., Documents 84, 101; 12/20/11 Tr. 35), and was part of the record when this Court issued its August 3, 2012, order returning Ali to custody.

The district court also incorrectly concluded (at 22) that the government caused delay when it "disclosed on the eve of trial its lack of evidence that Ali's charged conduct occurred on the high seas," and wrongly accused the government of "fail[ing] to understand the legal significance of not having evidence to support the allegations in its indictment," and of a "lack of candor" (at 22-23). The government's position has always been that Ali did not have to be physically located on the high seas to aid and abet piracy (see, e.g., 5/17/12 Tr. at 31). In resolving the government's interlocutory appeal in this case, this Court agreed with the government's position. Moreover, Ali's brief presence on the high seas was known to the defense and to the court no later than June 2012 (see 5/17/12 Tr. 30-31; Document 210 at 7), more than a month before July 20, 2012, the date referenced in the district court's opinion (Document 299

_____

(. . . continued)
this jurisdiction.

at 6). Thus, the district court's allegations of a "lack of candor" are inaccurate.[12]

      C.   <u>Applying the § 3142(g) Factors, Judge Huvelle's Decision to Release Ali with Conditions Was Unsupported by the Record.</u>

As an initial matter, the district court is incorrect that it owed no deference to Judge Friedman's findings, which resulted in orders of detention in this case. Although, as the district court points out (at 11) (citing 18 U.S.C. § 3142(f)(2)(B)), a court may revisit a detention determination when circumstances change, the only relevant changed circumstance in this case since this Court affirmed Judge Friedman's order of detention is the passage of time due to the government's interlocutory appeal. The district court is incorrect (at 7) that Judge Friedman was unaware of Ali's alleged

---

[12] The district court also incorrectly asserted (at 22) that the government's "late filing of a superseding indictment" caused delay. The government's first superseding indictment (Document 11), filed on April 29, 2011, just days after Ali was arrested, contained counts charging conspiracy to commit piracy, aiding and abetting piracy, attack to plunder a vessel and hostage taking. In his omnibus motion to dismiss that indictment (Document 120), filed in March 2012, Ali failed to raise the challenges to the piracy counts that would later become the basis for the district court's dismissal of Count 1 and narrowing of Count 2. The second superseding indictment (Document 172), filed May 8, 2012, removed the attack-to-plunder charge, added a hostage-taking-conspiracy charge, and slightly modified some of the language in the piracy conspiracy charge. The district court allowed Ali to file a new omnibus motion to dismiss the indictment, raising arguments that had been available to him all along, but which he had previously chosen not to raise (see 5/17/12 Tr. 40)(district court noting, "I don't know why you held on to some of this stuff, because some of it, to be fair, is not new . . . . That's not the way to do it . . . it's not fair to the Court.").

assistance to the *CEC Future*'s owners, and his "long history of working with the U.S. government" (Document 299 at 7). Ali raised those same points in the papers supporting his motions for release before Judge Friedman (see, e.g., Document 101), but Judge Friedman did not find them persuasive, and this Court affirmed Judge Friedman's order of detention in this case.

### 1.   Nature and Seriousness of the Offense

Ali has every reason to flee before trial. He unquestionably is charged with serious crimes. Indeed, hostage taking is listed in the United States Code as a "[f]ederal crime of terrorism," see 18 U.S.C. § 2332b(g)(5)(B)(i). And a conviction for piracy carries a mandatory life sentence. See 18 U.S.C. § 1651. The charges and potential sentencing exposure in this case provide Ali with a strong motive to flee. See El-Hage, 213 F.3d at 80 (prospect of life imprisonment creates strong motive to flee); United States v. Townsend, 897 F.2d 989, 996 (9th Cir. 1990) (affirming pretrial detention on basis of flight risk where defendants faced "severe penalties," "reside in foreign countries," and have "no significant ties to the United States").

Indeed, Ali's risk of flight has only *increased* since this Court's August 3, 2012, order reversing the district court's order of release. Last year, the district court had dismissed all but one of the charges against Ali, and significantly narrowed the only remaining count, but this Court recently reversed the dismissal of

all but Count 1. Now, Ali faces the certain prospect of trial beginning on October 31, 2013, and the prospect of life imprisonment if convicted. In addition, Ali is a foreign national with ties to Somalia; currently, he lacks significant ties to the District of Columbia, or even to the United States; he has no property, money, or other assets in this district; and his closest family members live abroad.

  2. <u>The Weight of the Evidence Supports Detention</u>

  Judge Huvelle erred in evaluating the strength of the evidence supporting release. That Ali may have defenses at trial does not undercut the government's showing of risk of flight. <u>See</u> <u>Townsend</u>, 897 F.2d at 995 ("whether in fact [the defendant] did the things of which [he is] accused, we do not and cannot anticipate what a jury will find or what defenses might be offered or what evidence might be excluded . . . the weight of the evidence proffered tells in favor of [the defendant] being [a] flight risk[]").

  In addition, Ali's past use of fraudulent immigration documents (see 12/20/11 Tr. 35; 7/24/12 Tr. 19-20) also favors detention. The district court attributed the misrepresentations to Ali's desire to remain in the United States, and concluded (at 27 n.12) that they do not indicate "that he is a flight risk." On the contrary, courts routinely consider lack of candor as evidencing risk of flight. <u>See</u> <u>United States v. Khanu</u>, 370 Fed. Appx. 121, 122 (D.C. Cir. 2010) (lack of candor concerning real-estate transactions showed risk of

flight); see also United States v. Bonilla, 388 Fed. Appx. 78, 80 (2d Cir. 2010); United States v. Mehmood, 358 Fed. Appx. 767, 769 (8th Cir. 2010). Indeed, Ali's misrepresentations are quite relevant to his risk of flight, as they indicate his willingness to use deception to travel across borders.

### 3.   Ali's "History and Characteristics" Favor Detention

It is undisputed that Ali is a foreign national who has ties to Somalia, where he resided before his arrest. In addition, Ali's eight-year-old son is located overseas (7/24/12 Tr. 17; 12/20/11 Tr. 35). Ali has not lived in the United States since 2007 (12/20/11 Tr. 35). He has no property, money, or other assets in this district (12/20/11 Tr. 35). His closest family members live abroad, and he is not employed in the United States. Each of those facts supports detention. See Khanu, 370 Fed. Appx. at 122 (finding "citizenship in Sierra Leone, [and defendant's] trip there prior to his indictment" were facts favoring detention); United States v. Stanford, 394 Fed. Appx. 72, 75 (5th Cir. 2010) ("access to international network of contacts," and "primary residence in Antigua" demonstrated risk of flight); Millan, 4 F.3d at 1046 ("travels abroad" and ties to foreign communities created incentive to flee); Townsend, 897 F.2d at 996.[13]

---

[13] Contrary to the district court's suggestion (at 26), the fact that Ali did not flee when briefly released in 2012 does not mean that he is not at risk to flee in the future. Indeed, flight would require Ali to obtain money and (possibly) travel documents, and would take planning and preparation. Although Ali may not have had time to make
(continued . . . )

The district court noted (at 26) that, during the briefing of the government's interlocutory appeal in this case, the government referenced Ali's <u>past</u> ties to the United States. As those ties are not <u>current</u>, however, they do not create a disincentive for Ali to flee upon release.

    4.   <u>No Combination of Conditions Will Reasonably Assure Ali's Appearance at Trial.</u>

No condition or combination of conditions will reasonably assure Ali's appearance at trial. 18 U.S.C. § 3142(e). Specifically, home detention with electronic monitoring is insufficient. Although the Pretrial Services Agency can make arrangements for the FBI to receive "alerts" (see 7/24/12 Tr. 23; Document 299 at 27 n.13), the "alerts" necessarily are after-the-fact. <u>See</u> <u>Townsend</u>, 897 F.2d at 994-95 ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction."). <u>See also</u> <u>United States v. Abad</u>, 350 F.3d 793, 799-800 (8th Cir. 2003). In addition, electronic monitoring can be defeated. <u>See</u>, <u>e.g.</u>, <u>United States v. Williams</u>, 387 Fed. Appx. 282 (3d Cir. 2010); <u>Millan</u>, 4 F.3d at 1049.

---

(. . . continued)
the necessary preparations for flight in 2012, his re-release might well enable him to do so before his October 31, 2013, trial date.

CONCLUSION

For these reasons, the government respectfully requests that this Court reverse the district court's September 5, 2013, order releasing Ali subject to conditions.

RONALD C. MACHEN JR.,
United States Attorney.

ELIZABETH TROSMAN,
MARY B. McCORD,
BRENDA J. JOHNSON,
FERNANDO CAMPOAMOR-SANCHEZ,
Assistant United States Attorneys.

/s/
_____
PETER S. SMITH, DC BAR #465131
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, DC  20530
(202) 252-6829

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 9th day of September, 2013, I caused a copy of the foregoing memorandum to be served via the Court's ECF system on appellant's counsel as follows:

        Timothy R. Clinton, Esq.
        Matthew J. Peed, Esq.
        CLINTON & PEED PLLC
        1455 Pennsylvania Ave., N.W.
        Suite 400
        Washington, D.C. 20004


                                    /s/
        _____
        PETER S. SMITH
        Assistant United States Attorney